August Balk, a resident of Tuscola county, made his last will and testament January 14, 1936. He died November 13, 1937, at the age of 76 years. For many years Mr. Balk had been engaged in farming on his 80-acre farm. Mrs. Balk died in 1932. At the death of Mr. Balk, he left four children, viz., William, of Cleveland, Ohio; August, of Detroit; Emma Piper, of Detroit; and Ella Ellison, of Gilford, Tuscola county; and one granddaughter, Marjorie Balk, child of a deceased son.
George Presley, an unrelated person, came to live at the Balk home in 1917 and more or less made his *Page 305 
home with the family until the fall of 1933. For many years, Balk had indulged in the use of intoxicating liquors and, after the death of his wife, he increased the amount of consumption to such an extent that on February 6, 1935, upon the petition of one of his daughters, a guardian was appointed of his person and of his estate, which was then estimated to be of the value of $10,000.
The will was drawn by an attorney while proceedings were pending for the removal of the guardian and after the attorney had insisted upon medical opinion as to Mr. Balk's mental condition and competency. Testator devised and bequeathed all of his property to Presley excepting $1 to each of his four children.
Proponent offered the will for probate, objections were filed to the will, and the proposed will was certified to the circuit court for hearing.
The trial judge instructed the jury that the will was executed in accordance with statutory requirements and that there was no evidence that the will was the result of insane delusions. The court submitted to the jury the questions of mental competency and undue influence. The jury sustained the will.
Contestants appeal and allege that the trial court was in error in instructing the jury as follows: "Under the proofs in this case it is established that the proposed will was duly executed in compliance with statutory requirements for the making of a will." It is urged by contestants that the legal execution of the will raised a question of fact and should have been submitted to the jury. Publication of a will is not required in this State. In re Kennedy's Estate, 159 Mich. 548
(28 L.R.A. [N. S.] 417, 134, Am. St. Rep. 743, 18 Ann. Cas. 892); In re Mette's *Page 306 Estate, 260 Mich. 225; In re Fowle's Estate, 292 Mich. 500. In our opinion the manner and form of execution of the will satisfied the statute, 3 Comp. Laws 1929, § 13482 (Stat. Ann. 26.1065), and the authorities applicable thereto, leaving no question of fact to be submitted to a jury.
It is also urged that the trial court was in error in instructing the jury that there was no evidence of insane delusions. The rule as to insane delusions is well stated inRe Barlum's Estate, 240 Mich. 393, where it is said:
" 'An insane delusion exists when a person persistently believes supposed facts which have no real existence, and so believes such supposed facts against all evidence and probabilities and without any foundation or reason for the belief, and conducts himself as if such facts actually existed. * * *
" 'If there are any facts, however little evidential force they may possess, upon which the testator may in reason have based his belief, it will not be an insane delusion, though on a consideration of the facts themselves, his belief may seem illogical and foundationless to the court; for a will, it is obvious, is not to be overturned because the testator has not reasoned correctly. The ultimate object of the inquiry is whether an insane delusion, destitute of all evidential support, spontaneously arising in testator's diseased mind, influenced him and operated directly against the contestant in this case.' "
Contestants rely upon the following evidence in support of their claim: The testator believed that he had gotten a "raw deal" from the courts in the guardianship proceedings, that the court had no jurisdiction over him, that he did not have to obey his guardian, that the guardian was taking his property and he had nothing to say about it, and that the children were responsible for the condition he was in. *Page 307 
In Re Lacroix's Estate, 265 Mich. 59, 63, we said:
"There is no doubt that James Lacroix believed that both by this settlement and by his having been placed under guardianship he had been grossly wronged and that his relatives had unjustly profited at his expense. In that particular his mental attitude was not unlike that of many, perhaps most, defeated litigants. * * * Nor is it strange or an indication of an insane delusion that Mr. Lacroix as a layman believed that a great injustice was done him. * * * His belief and course of conduct in this regard were not without foundation in fact and were not indicative of an insane delusion."
In our examination of the record we are satisfied that testator was not suffering from insane delusions and that the trial court was correct in so instructing the jury. As we view the situation, testator was accustomed to having the full control and management of his property and person for many years prior to the time one of his children filed the petition in the probate court for the appointment of a guardian over him. After the guardian was appointed, testator's property and affairs were at all times subject to the supervision, direction and control of the probate court and his guardian; and being deprived of his property and to some extent his liberty, he chafed under such restraint, which conduced itself in threats against his children, the court and his guardian. There was some basis for testators' beliefs and it was not error to charge the jury as was done in this case.
Contestants next urge that the trial court was in error in giving the following instructions:
"Declarations of testator himself do not constitute evidence of undue influence and there must be proof of acts of domination. Some influence may properly be used by some person upon another with reference to the making of his will. It is only when *Page 308 
the testator's will is overcome that the result is invalid.
"I charge you that George Presley had a perfect legal right to persuade Mr. Balk to leave his property as he proposed to do by the will here offered in evidence, and if you find that George Presley did so, such action on his part does not constitute undue influence, if the alleged will represents Mr. Balk's own desires in the premises."
The declarations of a testator are admissible to show the condition of his mind, but not to establish the fact of undue influence. Zibble v. Zibble, 131 Mich. 655.
In Re Livingston's Estate, 295 Mich. 637, 643, testator, while in extremis, made utterances to the effect that proponent's daughter had come into his room to kill him. We said:
"Such declarations, standing alone, do not constitute evidence of undue influence, even though they might help us understand the state of mind."
In Re Estate of Reynolds, 273 Mich. 71, 78, we said:
"The rule is settled by a long line of authorities that declarations of a testator do not constitute evidence of undue influence. In re Spinner's Estate, 248 Mich. 263. There must be proof of acts of domination."
The trial court was right in giving the instruction relating to declarations of testator and was equally right in giving the instruction relating to the right of persuasion.
In Re Ganun's Estate, 174 Mich. 286, 294, we said:
"Both had a perfect legal right to persuade the testator to leave his property as he did, and, if they had done so, the will would still stand as testator's will, if at the time of execution he was of sound *Page 309 
mind and the instrument represented his own desires in the premises."
The language used in Re Williams' Estate, 185 Mich. 97, and quoted again in Re McIntyre's Estate, 193 Mich. 257, well illustrates the attitude of our court upon this subject. In that case we said:
" 'To vitiate a will there must be more than influence. It must be undue influence. To be classed as "undue," influence must place the testator in the attitude of saying: "It is not my will, but I must do it." He must act under such coercion, compulsion, or constraint that his own free agency is destroyed. The will or the provisions assailed does not truly proceed from him. He becomes the tutored instrument of a dominating mind, which dictates to him what he shall do, compels him to adopt its will instead of exercising his own, and, by overcoming his power of resistance, impels him to do what he would not have done had he been free from its control. * * * Influences to induce testamentary disposition may be specific and direct without becoming undue. It is not improper to advise, persuade, to solicit, to importune, to entreat, and to implore. Hopes and fears and even prejudices may be moved. Appeals may be made to vanity and to pride; to the sense of justice and to the obligations of duty; to ties of friendship, of affection, and of kindred; to the sentiment of gratitude; to pity for distress and destitution. It is not enough that the testator's convictions be brought into harmony with that of another by such means. His views may be radically changed, but so long as he is not overborne and rendered incapable of acting finally upon his own motives, so long as he remains a free agent, his choice of a course is his own choice, and the will is his will, and not that of another.' (Ginter v. Ginter,79 Kan. 721 [101 P. 634, 22 L.R.A. (N.S.) 1024])."
In the case at bar, the questions of undue influence *Page 310 
and mental incompetency were properly submitted to the jury and, finding no error in the instructions given to the jury, the judgment is affirmed, with costs to proponent.
BUSHNELL, BOYLES, CHANDLER, NORTH, WIEST, and BUTZEL, JJ., concurred. McALLISTER, J., took no part in this decision.