GUSTAV I. BORSTAD v. MARTIN G. ULSTAD.
IN RE ESTATE OF OLE P. OLSEN.[1]

January 12, 1951.

No. 35,149.

[1]Reported in 45 N. W. (2d) 828.

*R. M. Saltness* and *Wallace Jackson,* for appellant.
*Theodor S. Slen* and *H. W. Swenson,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

This is an appeal from the judgment of the district court adjudging the will of Ole P. Olsen as the valid last will of said decedent and affirming the order of the probate court admitting the will to probate.

Ole P. Olsen was a native of Norway, a resident of Lac qui Parle county, and a citizen of the United States. For many years he owned and lived on a farm of 160 acres in that county, and his wife, Anna, owned a 40-acre tract nearby. In 1930, he rented his farm and went to Norway for two years, and on his return moved to Madison, Minnesota. He returned to his farm in 1937 and occupied it until 1945, but continued its operation by renting it to his wife's nephew, Martin G. Ulstad, respondent herein, who ultimately became the principal beneficiary under his will. Ulstad continued to operate the farm until Olsen's death on May 3, 1948.

On May 9, 1941, at the age of 79 years, Olsen made the will which is here in question. By this will, he gave his wife a life estate in all his property and the remainder to respondent, Ulstad, who was also named executor in the will. Olsen and his wife, who died on February 27, 1943, were childless. He was survived by a sister living in Norway, whose name was not mentioned in the will, and also by a large number of nephews, nieces, grandnephews, and grandnieces, 23 of whom were named in the petition for probate. Many others were not named, being particularly the children of certain predeceased brothers and sisters of Olsen.

After his wife's death in 1943, Olsen lived alone on his farm for almost two years. In January 1945, he became ill and went to live with a nephew, Gustav I. Borstad, appellant here, Gustav's sister Olga, and their mother, Mrs. P. O. Borstad, who lived nearby.

He remained there until his death, paying a small amount for board and care until his death.

The will was admitted to probate. An appeal was taken to the district court by 16 nephews and nieces, including Gustav I. Borstad, and by one grandnephew and two grandnieces. The case was tried to the court without a jury. The court found (1) that at the time decedent made and executed the will on May 9, 1941, he was of sound mind and of sufficient mental capacity to make a will; (2) that the will was not made as a result of any undue influence exercised by respondent or any other person; and (3) that there was no confidential relationship between respondent and decedent. The court ordered that judgment be entered accordingly. Appellant assigns as error that these findings are not supported by the evidence. A review of the record satisfies us that they were.

It is not within the province of this court to go into an extended discussion of the evidence to prove or demonstrate the correctness of the findings of the trial court. Our duty is performed when we have fairly considered all the evidence and from it have determined that it reasonably supported the findings. The question is not whether the trial court would have been justified in making findings in appellant's favor, but rather that the findings are supported by evidence reasonably tending to establish the facts found. Maust v. Maust, 222 Minn. 135, 23 N. W. (2d) 537; Service & Security, Inc. v. St. Paul F. S. & L. Assn. 211 Minn. 199, 300 N. W. 811.

Counsel for appellant devote a considerable portion of their brief and oral argument to the alleged errors committed by the trial court in the reception of evidence, particularly certain opinion evidence, contending that much testimony was admitted over the objection that it was immaterial, incompetent, and without sufficient foundation.

Appellant did not move for amended findings of fact or for a new trial on the ground of errors committed in the reception of evidence. It was his position that such a motion would have been idle in view of the fact that he moved to strike opinion evidence by what he termed respondent's "non-expert witnesses." It appears from

the court's order for judgment that at the close of the evidence appellant made a motion to strike the opinion evidence of certain of respondent's witnesses except their opinions that decedent was competent to transact ordinary business. This motion was made on the ground that the opinions were immaterial, incompetent, and without sufficient foundation upon which to base an opinion as to mental capacity. Appellant moved also on the same ground to strike the opinion testimony of other witnesses of respondent, except as to their opinions that decedent could transact ordinary business and that he knew the nature and extent of his property. He further moved to strike the entire testimony of Julius Lund on the same ground, except as to the ability of decedent to comprehend the nature and extent of his property and to realize who his relatives were. The court granted appellant leave to file a brief in connection with these motions and reserved its rulings on the motions until it made its order, at which time the motions were wholly denied.

In Ellison v. Fox, 38 Minn. 454, 38 N. W. 358, 359, this court, speaking through Mr. Justice Mitchell, said:

"An assignment of error that the court erred in finding certain facts is not sufficient to raise the question of alleged error in admitting incompetent evidence to prove these facts. The only question which such an assignment raises is the sufficiency of the evidence to support the findings; and in determining this we cannot assume to separate the competent from the incompetent evidence, but must consider all of it as being in the case without objection, no error being here assigned in its admission."

The law is well settled that mental capacity of a testator to make a valid will is sufficient if at the time of making the will he understands the nature, situation, and extent of his property; his relation to those who would naturally have claims on his bounty; the effect of the will in disposing of his property; and is able to hold these things in his mind long enough to form a rational judgment concerning them. In re Estate of Olson, 227 Minn. 289, 35 N. W.

(2d) 439; In re Estate of Forsythe, 221 Minn. 303, 22 N. W. (2d) 19, 167 A. L. R. 1; In re Estate of Jernberg, 153 Minn. 458, 190 N. W. 990; 6 Dunnell, Dig. & Supp. §§ 10208, 10212. The burden of proof to establish mental competency rests upon the proponent of the will, and whether this burden has been successfully sustained by proponent is a question of fact. In re Estate of Forsythe, *supra*. When an action is tried by a court without a jury, its findings of fact are entitled to the same weight as the verdict of a jury and will not be reversed on appeal unless they are manifestly and palpably contrary to the evidence. This rule applies whether the appeal is from a judgment or from an order granting or denying a new trial. 1 Dunnell, Dig. & Supp. § 411, and cases cited. Where the evidence as to testamentary capacity and undue influence is conflicting, findings of the trial court with respect to such questions are final on appeal, even though the appellate court, if it had the power to try the questions *de novo*, might determine otherwise. In re Estate of Olson, 227 Minn. 289, 35 N. W. (2d) 439, *supra*.

We cannot say that the evidence justifies a conclusion that testator was mentally incompetent as a matter of law. The trial court in its memorandum concedes that the evidence as to testamentary capacity was very conflicting, but states that the overwhelming weight was to the effect that testator was competent at the time the will was made. Most of this evidence on behalf of respondent came from persons who were entirely disinterested. In addition to the opinion of attorney Theodor S. Slen, who was one of the attesting witnesses, Leo A. Nikolai and Roy A. Stemsrud, both bankers of years' experience, who testified as to extensive banking dealings and social conversations with testator, gave their opinions that on May 9, 1941, and for some time prior thereto, Ole P. Olsen had sufficient mental capacity to understand the effect of a will in disposing of his property and was able to hold all these things in his mind long enough to form a rational judgment concerning them. J. E. Reyerson testified that decedent

had purchased a farm from him in 1942 and had handled the entire transaction himself. His opinion was that Olsen was capable of transacting ordinary business; that he knew who his relatives were; and that he knew the nature and extent of his property. Witness Martin O. Winge testified that in 1940 he purchased a house from testator, payment for which was completed in 1943, and that on May 9, 1941, Olsen had sufficient mental capacity to transact business and to grasp and understand the extent and situation of his property. Numerous other witnesses, most of whom were disinterested, after testifying to either business or social contacts with testator, were permitted to give their opinions as to his mental capacity. Appellant's witnesses admitted on cross-examination that testator either knew who his relatives were, knew the extent of his property, or knew the effect of disposing of it by will.

A more detailed review of the evidence presented on the question of competency would serve no purpose here in view of the fact that this court is bound by the rule previously stated that where the evidence as to testamentary capacity is conflicting the findings of the trial court with respect to that question are final on appeal. See, In re Estate of Olson, 227 Minn. 289, 35 N. W. (2d) 439, *supra*. The most that can be said of the evidence adduced by appellant is that it reveals testator to have been forgetful and failing in memory, but not in such degree as to indicate want of testamentary capacity. Forgetfulness or failure of memory do not of themselves take away a testator's capacity to dispose of property. See, Schmidt v. Schmidt, 47 Minn. 451, 50 N. W. 598.

Like the question of mental capacity, the question of undue influence is usually one of fact, of which the supreme court has only the limited review of inquiring as to the sufficiency of the evidence to sustain the conclusion reached. Rasmussen v. Evans, 150 Minn. 319, 185 N. W. 297. We agree with the trial court's memorandum that appellant failed to prove the existence of any.

undue influence that would justify a reversal here. Undue influence must be of such a nature that it destroys the free agency of the testator so that the will expresses the mind and intent of someone else and not that of the testator. In re Estate of Geske, 211 Minn. 447, 1 N. W. (2d) 423; In re Estate of Olson, 176 Minn. 360, 223 N. W. 677. The burden of proving undue influence is on the contestant, and proof thereof must be clear and convincing. It is not enough to raise a mere suspicion or conjecture. There must be evidence that undue influence was in fact exerted. It is not sufficient to show that a party benefited by a will had the motive and opportunity to exert such influence; there must be evidence that he did exert it. See, In re Estate of Mazanec, 204 Minn. 406, 283 N. W. 745, which so well collects the authorities that there is no need of restating them here.

We believe that the record also supports the finding of the court that there was no confidential relationship between appellant and testator. A relationship of confidence between the testator and a beneficiary is not sufficient to prove undue influence. It must be shown that influence was exerted in a special degree to procure a will peculiarly acceptable to a beneficiary. In re Estate of Mazanec, *supra;* In re Storer's Will, 28 Minn. 9, 8 N. W. 827; In re Estate of Jernberg, 153 Minn. 458, 190 N. W. 990; In re Estate of Simmons, 156 Minn. 144, 194 N. W. 330. Such a showing was not made in this case as to justify a reversal on that ground alone.

We agree also with the trial court's memorandum that there is undoubtedly disappointment in the instant case on the part of certain nephews and nieces and especially appellant and his family, who took care of testator during the last three years of his life for a comparatively small consideration. However, we cannot reverse on that ground where it appears from the record, as here, that testator was of sound mind and had sufficient capacity to make a will at the time it was executed; that it was

not made under undue influence; and that no confidential relationship existed between appellant and testator.

Affirmed.

