IN RE ESTATE OF ATHANASIOS LIBEROPULOS.
VASILIOS K. LIBEROPULOS, ALSO KNOWN
AS WILLIAM LIBER, v. M. CHOPIS.[1]

December 9, 1955.

No. 36,543.

_[1]Reported in 73 N. W. (2d) 607.

554

*Stetson & Jacobson,* for appellant.

*Grannis & Grannis* and *Luther M. Stalland,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Appeal from a judgment affirming an order of the probate court of Dakota County refusing to admit to probate the will of decedent Athanasios Liberopulos and from an order denying the motion of proponent of the will for amended findings and conclusions or for a new trial. In refusing admission of the will, the district court affirmed the probate court's finding that on May 19, 1947, at the time of the execution of the will, decedent was mentally incompetent and lacking in testamentary capacity.

The will was drawn by Peter E. Kamuchey, attorney for the decedent. At the latter's request, its execution was attested to by him in the following language:

"On this nineteenth (19th) day of May, 1947, the foregoing instrument was exhibited to us by Athanasios Liberopulos, who was then, to the best of our observation, knowledge and belief, of sound mind and memory, by him declared to be his Last Will and Testament, and by him signed in our presence; and, at the same time, at his request and in his presence, we signed our names thereto as witnesses thereof."

At the time of the execution of the will and for some years prior thereto, as a disabled war veteran entitled to compensation for injuries sustained in World War I, decedent had been under guardianship required by the U. S. Veterans Bureau. He died December 7, 1950, and shortly thereafter the will was offered for probate. Prior to the hearing thereon, objections to its admission were interposed by M. Chopis, acting consul general of Greece at Chicago, Illinois, on behalf of Eustathios Liberopulos, an heir-at-law of decedent, as well as on behalf of other heirs of decedent, all of whom are residents and citizens of Greece. The objections were based upon the ground that at the time of the execution of the will decedent was

under guardianship, of unsound mind, and mentally incapable of making his will; and on the further ground that the will was invalid because the witnesses thereto had not attested it in the presence of each other.

At the hearing in probate court the acting consul general of Greece submitted in evidence certain powers of attorney executed by various heirs of the decedent authorizing him to represent them in the probate proceedings. Such powers of attorney had been executed in Greece and acknowledged there before the United States consulate, certificates to such effect being attached thereto. Counsel for the proponent of the will then stated:

"* * * There is no objection to the form or validity of the powers of attorney except that they are limited therein, in that they are in their own language, with translation. With that there is no objection."

At the hearing in probate court Mr. Kamuchey testified that he had prepared the will and signed the attestation clause thereon above referred to. Under cross-examination by counsel for the objector, he testified that he had been attorney for decedent's guardian for a number of years and had conferred with decedent on legal matters numerous times prior to the execution of the will. He testified further that in his opinion decedent was not competent to execute the will at the time he had signed it; that decedent was not mentally well; that his mind was a blank; and that decedent was peculiar in many ways—"didn't seem to remember things, didn't seem to have a hold of situations * * * just went along." He explained his actions in advising decedent as to the will and his preparation and attestation thereof as follows:

"He first spoke to me about a will * * * two or three weeks, possibly a month, before the will was finally drawn up. * * * I tried to humor him at the time. You had to handle him more or less diplomatically so as not to give him the idea he was useless. I said, 'You come up to the office sometime, Tom, and let's you and I talk this over. If you insist we will draw one up, but I don't think you should have it.' * * * About ten days or two weeks after-

wards I met him downtown in St. Paul * * *. He spoke to me again * * *. He insisted and I said, 'All right, come over to the office.' He came to the office one or two days before the will was drawn up and we sat down in my private office. I inquired about his parents, whether they were living or dead, inquired whether or not he had brothers or sisters. I had a general idea he had one or two brothers and one or two sisters, but I didn't know. He was very vague about it * * * he seemed to have gotten the idea that I didn't want to draw it up and he said, 'If you don't want to draw it up I will go to another lawyer.' I said, '* * * I will draw it up.' He insisted I draw it up. * * * He came in the next day. I had the will ready * * *.

$$* \quad * \quad * \quad * \quad *$$

"He paid me $5.00 for it."

After Mr. Kamuchey's attestation of the will, decedent took it to a friend, Nikola Anarich, a resident of Milwaukee, and requested that the latter sign as a further witness. Mr. Anarich testified that decedent had come to his house with the will and had stated to him, "Nick, you come here sign * * * my will. After I die I got a will must sign witness, okay?" He further testified: "I asked him where you sign it. He say right here. It's okay I sign it." Decedent's signature, as well as the signature of the other attesting witness, was then on the will, and Anarich signed it as a witness after decedent had said it was his will and asked him to do so.

The evidence other than the testimony of Mr. Kamuchey tended to establish that decedent, although under guardianship, was of sufficient mental capacity to qualify him to execute his will. Mr. William Liber, named as executor of the will and residuary legatee, testified that decedent was of sound mind, and Mr. Nikola Anarich, the other subscribing witness, testified that in his opinion he was mentally competent to execute his will. Testimony was submitted showing that decedent had handled the compensation which he received from the federal government as a result of war disabilities and which amounted to $100 a month in such a way that he had been able to accumulate an estate of approximately $5,500.

Mrs. William Liber testified that shortly after decedent's death she had called upon Mr. Kamuchey and had then been advised by him that "he thought he could see the will go through as it is if—well, he didn't mention any sum of money, but he did mention in a way that if we did let him take care of it that he would fix it up for us"—that the will would be probated; and that at that time he (Mr. Kamuchey) did not say he thought decedent was mentally ill. Mr. Kamuchey denied making the statements described. Subsequent to this meeting, the proponent engaged other counsel to conduct the probate proceedings.

The will made provision for bequests of $700 to Sophie Petropoulis of St. Paul; $1,500 to Efstathios Liberopulos, now a resident of the village of Vlassi, Messinias, Greece; and $300 to St. Mary's Church in the village of Vlassi, with the residue going to William Liber, who was a cousin of the deceased and who had been closely associated with him for a number of years. It made no provision for brothers or sisters of the deceased, then citizens of Greece.

In a memorandum attached to its findings, the trial court stated:

"The evidence adduced by the proponent in this case on the question of decedent's mental competency was extremely unimpressive and unconvincing. On the other hand, the testimony of one of the attesting witnesses, Mr. Kamuchey, the attorney who had drawn the will, was credible and convincing. It is true that in this case he appears in an extremely inconsistent light in that he drew and witnessed the will of the decedent whom he now states he knew was not competent at the time that the will was drawn and signed. * * * a Court which has such a serious question * * * before it, must receive all the evidence that bears upon the question and therefore it has apparently become the general rule that in such case such evidence must be received although when received it must be closely scrutinized and viewed with caution. In the instant case Mr. Kamuchey explained quite satisfactorily why he had drawn the will for a party whom he did not believe to be competent when he drew the instrument and signed same as a witness."

At the trial both parties submitted and relied upon the testimony adduced by their witnesses in the probate court proceedings and in addition offered further testimony. The substance of all such testimony is included in the facts as outlined above. On appeal here it is contended (1) that the evidence is insufficient to support the trial court's findings; (2) that there was not sufficient authority demonstrated by objector to establish his right to appear and interpose objections to the will on behalf of the heirs at law; and (3) that the failure of the witness Nikola Anarich to attest the will in the presence of the other subscribing witness thereto invalidated the will under Minnesota statutes.

■ This court has consistently held that the burden of proof to establish mental capacity rests upon the proponents of a will. In re Estate of Healy, 243 Minn. 383, 68 N. W. (2d) 401; Borstad v. Ulstad, 232 Minn. 365, 45 N. W. (2d) 828; In re Estate of Forsythe, 221 Minn. 303, 22 N. W. (2d) 19, 167 A. L. R. 1. In Borstad v. Ulstad we described the requirements of mental capacity as follows (232 Minn. 369, 45 N. W. [2d] 831):

"The law is well settled that mental capacity * * * to make a valid will is sufficient if at the time of making the will he [the testator] understands the nature, situation, and extent of his property; his relation to those who would naturally have claims on his bounty; the effect of the will in disposing of his property; and is able to hold these things in his mind long enough to form a rational judgment concerning them."

■ Ordinarily, whether such burden of proof has been sustained is a question for the trier of fact, and this court will not interfere with the latter's determination if there is evidence reasonably tending to support it. Borstad v. Ulstad, *supra*. In the instant case the trial court's determination that the decedent lacked sufficient mental capacity to execute his will and its refusal to admit it to probate was based upon testimony of Mr. Kamuchey, the lawyer who had drafted the will and who at decedent's request had attested it. His testimony as to decedent's lack of mental capacity appears to be the only direct evidence giving support to the trial court's finding.

Otherwise, notwithstanding the fact that decedent was under guardianship, the evidence, for the most part, would seem adequate to support a finding that he had sufficient mental capacity to make his will, and it must follow, therefore, that, if a contrary result is to be sustained, the testimony of Mr. Kamuchey on this issue should be clear and convincing.

■ It is a general principle of law that evidence presented by an attesting witness which is intended to impeach the testamentary capacity of the testator should be viewed with suspicion and caution. This rule is stated in 2 Page, Wills (3 ed.) § 779, as follows:

"If the subscribing witnesses testify adversely to the capacity of testator, they have under oath stated that he was incompetent ·to make a will, while by their solemn ·acts in subscribing as witnesses they have in effect formally declared that he was competent. Accordingly, their testimony adverse to the capacity of testator is, under such circumstances, of but little value, * * *."

See, also, e.g., Bodine v. Bodine, 241 Ky. 706, 44 S. W. (2d) 840; Will of Szperka, 254 Wis. 153, 35 N. W. (2d) 209; Annotation, 79 A. L. R. 394. This court has adhered to this general principle in In re Estate of Jensen, 185 Minn. 284, 286, 240 N. W. 656, when it stated:

"The rule is that the testimony of an attesting witness which impeaches the will upon the ground of mental incapacity of the testator is subject to close scrutiny and should be viewed and weighed with caution."

■ It is true there may be circumstances in which the apparent contradiction between the attestation of a will by a witness and his subsequent testimony with reference to testator's mental capacity will not reflect upon his credibility and will justify a departure from the general rule above stated. Thus, in Williams v. Lee, 47 Md. 321, 326, the court justified such an inconsistency by accepting a witness' explanation that he had prepared the will and had complied with testator's requests therein "in order to humor her * * * soothe and quiet her." Here, a similar justification was submitted by Mr.

Kamuchey. As indicated, he testified that he tried to humor decedent; that he did not want him to feel "useless"; and finally that he had yielded to decedent because of the latter's statement that "If you don't want to draw it, I'll go to another lawyer." The reasons submitted to support his conclusions as to decedent's lack of mental capacity were that decedent appeared "peculiar in many ways" and "didn't seem to remember things"; and that "his mind was a blank."

The court deemed the foregoing sufficient to explain the inconsistency between Mr. Kamuchey's attestation and his subsequent testimony as to lack of mental capacity. However, in the light of the evidence submitted by the proponent of the will on this issue, we hesitate to hold that these explanations in themselves completely justify the inconsistency described, particularly in the face of Mr. Kamuchey's testimony that at the time the will was drawn decedent had given him instructions which indicated decedent's recollection of the general nature and extent of his property, as well as the people whom he wished to favor therewith, including his cousin, William Liber, who had been his companion for many years. Further, the fact that decedent was able to accumulate capital to the extent of $5,500 out of the $100 monthly allowance he received from the government would indicate that he had substantial shrewdness and business capacity, even though it does appear that he gambled to some extent.

While we do not wish to state that Mr. Kamuchey's testimony is insufficient to support the decision of the trial court, we do feel that in the interests of justice and because of the importance of the question involved the issue should be more fully litigated and an opportunity afforded both parties to submit such evidence thereon as might be of aid to the court in determining it.

■ With respect to the authority of M. Chopis, acting consul general of Greece, to appear and object to probate of the will, we do not feel this issue is before us for determination. Throughout the trial proponent of the will made no valid objection to his appearance, contending only that the powers of attorney submitted, which

were acknowledged in conformance with M. S. A. 358.26 and 358.24, governing acknowledgment of deeds and other instruments executed in foreign countries, were in the Greek language with English translations attached, a factor which of course did not affect their validity. It is clear therefrom that no question on this issue was presented for determination by the trial court. It follows that we have nothing before us with respect thereto. Lohman v. Edgewater Holding Co. 227 Minn. 40, 33 N. W. (2d) 842; Duenow v. Lindeman, 223 Minn. 505, 27 N. W. (2d) 421.

■ Testimony of Nikola Anarich as to his attestation of the will gives adequate support to the trial court's finding that there had been sufficient compliance with statutory requirements in this respect. Under § 525.18 the attesting witnesses to a will need not sign it in each other's presence, Gates v. Gates, 149 Minn. 391, 183 N. W. 958, and we have held that a testator's acknowledgment to a witness of his execution and publication of the will is sufficient, even though the actual signing thereof took place elsewhere. In re Estate of Larson, 141 Minn. 373, 170 N. W. 348. The testimony of Anarich clearly demonstrated that decedent had acknowledged to Anarich his execution and publication of the will and had requested that the latter sign as a witness thereto. Under the statute and decisions cited, nothing further was required in this respect.

The judgment is reversed and a new trial ordered.

Reversed.