IN RE ESTATE OF JULIANA HOLDEN.
DORIS B. LARSEN, SPECIAL ADMINISTRATRIX OF
ESTATE OF HENRY A. BERG, AND ANOTHER
v. MARCUS L. BJERKE AND OTHERS.

113 N. W. (2d) 87.

January 26, 1962—No. 38,296.

528

*Maurice O. Nelson,* for appellant Marcus L. Bjerke.
*Erickson & Erie,* for other appellants.
*Clarence W. Kludt* and *Padden & Dickel,* for respondents.

KNUTSON, JUSTICE.

This is an appeal from a judgment of the district court upholding the validity of a will of decedent, Juliana Holden, attacked on three grounds: (1) That the testatrix lacked mental capacity to make the will; (2) that it was the result of undue influence on the part of Henry A. Berg, her brother; and (3) that it was not executed according to law. The case was tried to the court without a jury on appeal from the probate court, and the district court upheld the validity of the will, reversing an order of the probate court which had refused to admit the will to probate.

On appeal, the evidence and inferences to be drawn therefrom must be viewed in the light most favorable to the court's finding.[1]

While there are, as usual, conflicts in the evidence, the following facts find reasonable support in the record.

Juliana Holden died on August 22, 1958, at the age of 82. She had lived most of her life in Fosston, Minnesota. Following an illness, she became a patient in the Fosston Hospital in September 1952, where she remained almost continuously until her death. Before going to the hospital she lived for 11 months at the home of her brother, Peter Sovick. She paid him and his wife $2,000 for the time she stayed with him. During her lifetime she had given various sums of money to the Sovicks and other members of her family.

Her doctor characterized her as a woman "very strong willed and * * * a little quick to anger," and this was substantiated by nearly all the witnesses. She had her dislikes and likes, and she never hesitated to state what they were. She was characterized as a rather independent sort of woman.

Henry A. Berg was her younger and sole surviving brother at the times here involved. He had lived in Fosston until he reached the age of 35 and since then had lived in Ely or Duluth. He came to visit his sister frequently, and during the time she was in the hospital he visited her every 5 or 6 weeks. Mrs. Holden had one sister, Lena, who lived in Vancouver, Washington, who had not visited testatrix for some time prior to her death. Both Henry A. Berg and Lena have died since the commencement of this action, and representatives of their estates have been substituted in their place. Various other more distant relatives lived in Fosston and elsewhere and occasionally visited with testatrix in the hospital.

On January 8, 1955, Henry A. Berg petitioned the Polk County Probate Court that he be appointed guardian of the person and estate of testatrix. She joined in the petition and waived a hearing, and Berg was so appointed. Certain real estate located in California was listed in this petition but did not later appear in the inventory of assets

---

[1] In re Estate of Healy, 243 Minn. 383, 68 N. W. (2d) 401; In re Estate of Rasmussen, 244 Minn. 215, 69 N. W. (2d) 630.

of her estate. The record shows that Berg had an attorney in Fosston draw up a deed to this land, leaving the name of the grantee blank. It was so executed and acknowledged by testatrix. The land later was forfeited for nonpayment of taxes and the taxes were paid by Berg, and he thereafter inserted his own name in the deed as grantee. It was his testimony that testatrix gave the land to him as a gift.

In April 1955 Mrs. Holden went to a hospital in Crookston for medical attention. While she was there, Berg called Francis H. Stadsvold, an attorney in Crookston, and informed him that Mrs. Holden desired to make a will. Stadsvold had lived in Fosston and had known testatrix for about 45 years, although he had not seen her recently prior to this call. He went to the hospital and spent about an hour or an hour and a half with her. She called him by his nickname and they visited about relatives and other things and she identified her property and relatives. She gave him information as to how she wished to dispose of her property and he made notes of it. When they had finished he went over his notes with her carefully and thereafter drew the will on a printed form in accordance with the notes he had made. When he returned to the hospital to have the will executed, he learned that Mrs. Holden had returned to the Fosston Hospital. He thereupon called Berg at Duluth and informed him that he would mail the will to him at Fosston. Berg thereafter picked up the will, enclosed in a sealed envelope, at Fosston and gave it to Dr. Norman Sather. Although there is some dispute in the evidence, the court was justified in finding that the will was handed to Dr. Sather without Berg having opened the envelope. Mrs. Holden had been under Dr. Sather's care during all the time she had been at the hospital. There is some question as to when Mrs. Holden signed the will, but in any event Ralph O. Hegg, the hospital administrator, was asked to witness Mrs. Holden's signature, which he did. Dr. Sather asked Mrs. Holden if it was her will, and she answered in the affirmative. He then took the will to the lobby where he signed as a witness. He was then about 25 feet from Mrs. Holden's room. She was in bed and could have seen him if she had gone to the door but not otherwise. While he was in the lobby, Dr. Sather asked nurse Hilda Stee to get some more witnesses. As Hegg was leaving Mrs. Holden's room, Hilda Stee en-

tered, and Thelma Berglund, another nurse, was in the room while Hilda Stee signed. Thereafter Thelma Berglund signed as a witness. None of the witnesses to the will other than Dr. Sather would state that they knew it was a will when they signed as witnesses, but the will was drawn on a printed form, on both sides of which appear in bold letters the words "LAST WILL AND TESTAMENT."

As to testamentary capacity, some of the witnesses called indicated that Mrs. Holden was forgetful. In 1955 she expressed a desire to go to her old home in Fosston to live. The evidence shows that prior to that time she had deeded the home to Berg's son. There is other evidence that in some respects she was somewhat forgetful. Of witnesses to the will, Dr. Sather had no opinion as to Mrs. Holden's testamentary capacity, even though he had seen her practically every day and had taken care of her for a period of many years. Mr. Hegg, who admitted that she paid her own bills monthly and that he frequently cashed her checks, was equally evasive. With respect to his opinion as to whether she knew the nature and extent of her property, he said: "I'm not sure. She probably knew. I couldn't say for sure but I would be inclined to doubt it." Witness Hilda Stee was never directly asked for her opinion, and Thelma Berglund remembered almost nothing and was likewise never asked for her opinion. Attorney Stadsvold, who drew the will and who had known Mrs. Holden for many years, stated that in his opinion she had testamentary capacity at the time he obtained the information from her as to what she wanted in her will. Some of the other more distant relatives were of the opinion that Mrs. Holden lacked testamentary capacity.

■ The applicable law respecting establishment of testamentary capacity to make a will is so well settled that it seems useless to repeat it. A testatrix has sufficient capacity to make a valid will if at the time of making the will she understands the nature, situation, and extent of her property and the claims of others upon her bounty or her remembrance and she is able to hold these things in her mind long enough to form a rational judgment concerning them.[2]

---

[2]In re Estate of Forsythe, 221 Minn. 303, 22 N. W. (2d) 19, 167

**532**

■ The burden of proving testamentary capacity rests on the proponents of the will.[3]

■ While there is evidence in this case that indicates some lapse of memory on the part of testatrix at times, there is ample evidence to sustain the court's finding of testamentary capacity. It is difficult to believe that a doctor who had attended a patient for several years and had known her nearly all his life would not have some opinion concerning her mental capacity. The most convincing evidence in the case is that of the attorney who drew the will. None of the four attesting witnesses would state that Mrs. Holden lacked testamentary capacity. They either had no opinion at all or were not asked to state it. The court was justified in finding that the proponents of the will had sustained their burden of proof on this issue.

■ Much the same is true on the issue of undue influence. The law applicable to this phase of the case is so adequately and completely stated in In re Estate of Mazanec, 204 Minn. 406, 283 N. W. 745, and In re Estate of Marsden, 217 Minn. 1, 13 N. W. (2d) 765, that it could serve no useful purpose to repeat it here. On this issue, the burden rests on the contestants. While it is true that Henry Berg was closer to testatrix than other relatives, and probably had an opportunity to exert undue influence if he had chosen to do so, the evidence falls far short of establishing as a matter of law the fact that the will executed by Mrs. Holden was the result of such influence rather than a will of her own. Berg was not present when Mr. Stadsvold obtained the necessary information to draw the will. Neither was he present when the will was executed. The mere fact that he was treated more liberally than other relatives does not, of itself, establish undue influence. There were many reasons why he should be so treated. He was closer to testatrix than other relatives and had been for many years. He had looked after her affairs for a long time. Aside from one

---

A. L. R. 1; In re Estate of Jernberg, 153 Minn. 458, 190 N. W. 990; Borstad v. Ulstad, 232 Minn. 365, 45 N. W. (2d) 828; In re Estate of Liberopulos, 245 Minn. 553, 73 N. W. (2d) 607.

[3]In re Estate of Healy, 243 Minn. 383, 68 N. W. (2d) 401; In re Estate of Rasmussen, 244 Minn. 215, 69 N. W. (2d) 630.

sister who lived far away and had not seen testatrix for some time, other relatives were all more distant than Berg. On this issue, again, we have before us simply a question of fact, and there is ample justification for the court's finding that the contestants here have failed to establish undue influence by the requisite quantum of proof.

■ More difficulty exists with the claim that the will was not executed according to law. The governing statute is Minn. St. 525.18, subd. 1, which reads:

"Every person of sound mind, not a minor, may dispose of his estate, or any part thereof, or any right or interest therein, by his last will in writing, signed by him or by some person in his presence and by his express direction, and attested and subscribed in his presence by two or more competent witnesses."

Under this statute the witnesses need not sign in each other's presence.[4] While ordinarily the burden of proving execution of the will according to the statute rests on the proponent,[5] where the attestation clause is in regular form and the signatures of the testator and witnesses are genuine, a presumption exists as to due execution, and the burden then rests upon the contestants to overcome this presumption. Here the attesting clause reads:

"On this 30th day of April, 1955, the foregoing instrument was exhibited to us by Juliana Holden, who was then, to the best of our observation, knowledge and belief, of sound mind and memory, by her declared to be her Last Will and Testament, and by her signed in our presence; and, at the same time, at her request and in her presence, we signed our names thereto as witnesses thereof."

It is undisputed that the will bears the genuine signature of testatrix. The signatures of all four attesting witnesses are also admitted to be genuine. Under these circumstances, the burden of proof on this

---

[4]Gates v. Gates, 149 Minn. 391, 183 N. W. 958; In re Estate of Liberopulos, 245 Minn. 553, 73 N. W. (2d) 607.

[5]In re Layman's Will, 40 Minn. 371, 42 N. W. 286; Tobin v. Haack, 79 Minn. 101, 81 N. W. 758.

534

issue rested on contestants. In Lott v. Lott, 174 Minn. 13, 18, 218 N. W. 447, 449, we said:

"Where the attestation clause is full and complete and the signature to the will is the genuine signature of the testator and the signatures to the attestation clause are the genuine signatures of the witnesses, the will is presumed to have been duly executed, and those attacking it on the ground that it was not executed with the formalities required by law have the burden of proving that fact."[6]

■ To constitute a valid attestation of a will under our statute, the will must either be signed by the testator in the presence of the witnesses or the testator must acknowledge his signature to them or in some other way indicate that he has signed and executed it.[7] Where the witnesses sign in the conscious presence of the testator or within his range of vision, the attestation is usually sufficient.[8]

■ Under these rules there might be some question as to whether Dr. Sather signed as a witness in the conscious presence of Mrs. Holden or within her range of vision, but there can hardly be any question but that the evidence sustains a finding that the other three witnesses did so. The court below found that Dr. Sather stood in the doorway to Mrs. Holden's room and there asked Mr. Hegg and nurses Stee and Berglund to sign, in the presence and hearing of Mrs. Holden, and that she acquiesced therein by her silence. Actual signing within her conscious presence can hardly be open to doubt. The court also found that Dr. Sather had asked Mrs. Holden if it was her will and if she had signed it as such and that she answered in the affirmative. While the testimony of Dr. Sather and the other witnesses is not as satisfactory as might be desired, "[a] will does not fail merely because the memories of the attesting witnesses fail."[9]

---

[6]See, also, Baxter v. Baxter, 136 Minn. 59, 161 N. W. 261; Hennes v. Huston, 81 Minn. 30, 83 N. W. 439; In re Estate of Coleman, 192 Minn. 86, 255 N. W. 481.

[7]Tobin v. Haack, 79 Minn. 101, 81 N. W. 758; Kroschel v. Drusch, 138 Minn. 322, 164 N. W. 1023.

[8]Cunningham v. Cunningham, 80 Minn. 180, 83 N. W. 58, 51 L. R. A. 642.

[9]Baxter v. Baxter, 136 Minn. 59, 61, 161 N. W. 261, 262.

The evidence here will sustain findings that Hilda Stee was asked to sign as a witness by Dr. Sather while he was standing in the doorway to Mrs. Holden's room, not over 8 feet away from her; that at that time Thelma Berglund was also in the room; and it is likely that Mr. Hegg was either in the room or just leaving it. Thelma Berglund remembers almost nothing; Dr. Sather is equivocal, but an inference is permissible from all the evidence that all parties either were in the room or within hearing at the time Dr. Sather asked them to sign as witnesses and asked Mrs. Holden whether it was her will and if she had signed it. Under these circumstances, there was a sufficient attestation of the will by at least two witnesses, which is all the statute requires.

■ Ralph O. Hegg and Thelma Berglund, probably due to lapse of memory, testified that they did not recall whether or not they knew that the instrument they were witnessing was a will; Hilda Stee testified that she did not know that it was a will. Obviously, Dr. Sather knew what it was. The instrument, on both sides, carries in bold black type the words "LAST WILL AND TESTAMENT." It is inconceivable that the witnesses could have signed this instrument without seeing these words and, having seen them, that they did not know what they were signing. At least, an inference is justifiable that they knew what the instrument was. In Kroschel v. Drusch, 138 Minn. 322, 325, 164 N. W. 1023, 1024, we left open the question whether it is necessary to show that witnesses to a will know the nature of the instrument they are witnessing. We there said:

"* * * Whether it is necessary that the witnesses should know that the document is a will, is a question upon which courts differ. Since attestation is generally regulated by statute, apparent differences in judicial opinions are in some cases due to variations in language of statutes. The greater number of cases arising under statutes like our own are to the effect that there may be an attestation of the execution of a will, though the attesting witnesses do not know its contents and do not know that it is a will. * * * It is not necessary to decide that question in this case, since if disclosure of the nature of the instrument is necessary, there is evidence from which the court might have found that such disclosure was made."

536

Much the same is true in this case. While there may be some divergence of opinion as to whether publication, that is, knowledge on the part of the witnesses that the instrument is a will, is necessary, it is generally held that, in the absence of a statute requiring publication, it is not necessary to show that the witnesses knew the nature of the instrument.[10] The important thing is that they know that the instrument has been executed by a competent testator. We now hold that publication of a will is unnecessary in order to establish its validity.

We find no reversible error.

Affirmed.

---

[10]57 Am. Jur., Wills, § 284; 94 C. J. S., Wills, § 187; In re Balk's Estate, 298 Mich. 303, 298 N. W. 779; In re Estate of Hagemeier, 244 Iowa 703, 58 N. W. (2d) 1; Will of Zych, 251 Wis. 108, 28 N. W. (2d) 316; Herring v. Watson, 182 Ind. 374, 105 N. E. 900; Genovese v. Genovese, 338 Mass. 50, 153 N. E. (2d) 662; In re Estate of Hill, 198 Ore. 307, 256 P. (2d) 735; Humphrey v. Wallace, 169 Kan. 58, 216 P. (2d) 781; Taliaferro v. King (Ky.) 279 S. W. (2d) 793.