STATE, Plaintiff, v. HORAN, Defendant.*

*September 6—October 1, 1963.*

* Motion for rehearing denied, with $25 costs, on December 20, 1963.

For the plaintiff there was a brief and oral argument by *Rudolph P. Regez* of Monroe, counsel for the Board of State Bar Commissioners.

For the defendant there was a brief by *Callahan & Arnold* of Columbus, and oral argument by *Carroll B. Callahan.*

PER CURIAM.   Mr. Horan, a bachelor forty-six years old, has practiced law in Friendship, Wisconsin, for over twenty years.  He also has served as postmaster at Friendship since 1941 excepting for a period of approximately three and one-half years during which he was in military service as a special agent with the Intelligence Corps of the army.  He enjoys a good reputation in his community and was a close friend and adviser of Wellington B. Barnes, a widower, who died on October 11, 1959, at the age of eighty-seven leaving an estate of approximately $265,000.  Upon Barnes' death, the only heir at law was Myrtle Marks, a first cousin of the half blood.  He also left a relative, Elizabeth Hover, a first cousin once removed.  After Mrs. Barnes' death and between April 28, 1955, and November 29, 1958, Horan drew six wills for Barnes and a codicil on February 14, 1959.  The general scheme of the wills provided specific bequests and a proportion of the residuary estate to various friends and to Myrtle Marks, Elizabeth Hover, and Horan.  The first will contained a bequest to Mr. Horan of $12,633 and a proportional share of the residuary estate.  In each succeeding will, as other beneficiaries were eliminated or their share cut down, the specific bequest or the share of the residuary estate to Horan was increased until in the last and sixth will the bequest amounted to $46,500 and one thirteenth of the residue.  In the last four wills an *in terrorem* clause was inserted because of the concern of the testator about a threatened will contest by Myrtle Marks who had stated on several

occasions that it made no difference what the will provided she was an heir and intended to get her money anyway. Horan advised the testator such a clause was against public policy but the testator insisted it be inserted in the wills. No claim is made the testator was incompetent or the defendant used undue influence in procuring the financial benefit to himself under the will.

After the decision in the *Estate of Barnes, supra,* which held the sixth will should not be admitted to probate on the ground of lack of proof the testator knew the contents thereof, he not having read it or having had it read to him, the fifth will dated May 7, 1958, was propounded for probate and objections were filed. Subsequently a stipulation was entered into whereby the objections to the will and the claims against the estate by Elizabeth Hover and Myrtle Marks and others were withdrawn upon certain payments to be made. The stipulation was approved by the court and the will was admitted to probate. As a result, Horan's legacy and residuary share totaled $38,817.22 and at least one claimant received a substantial payment although not a beneficiary under the fifth will.

Posed for consideration is the specific question of whether Mr. Horan's conduct subjects him to any disciplinary action and a broader question of whether an attorney under any circumstances may draft and supervise the execution of a will for his client wherein he is named a substantial beneficiary without violating the rules of professional conduct. No claim is made Horan exercised any undue influence in drafting the wills in which he became a substantial beneficiary. If he did, his conduct would involve moral turpitude and would demand that this court impose more-severe discipline than it does in this case. An attorney who by undue influence or fraud or overreaching obtains a gift or a benefit from a client in a will or by an *inter vivos* transaction is guilty of an act involving moral turpitude. *Magee v. State*

*Bar* (1962), 58 Cal. (2d) 423, 24 Cal. Rptr. 839, 374 Pac. (2d) 807; *Lantz v. State Bar* (1931), 212 Cal. 213, 298 Pac. 497. The practice of the law is not a business but a profession—a form of public trust, the performance of which is entrusted only to those who can qualify by fitness, not the least of which is good moral character. While within his power, an attorney has no right to jeopardize the performance of his duties or the confidence, approval, and esteem of the public which the legal profession has traditionally enjoyed. An attorney has a duty not to harm but to maintain the integrity of the legal profession even though this may call for a personal sacrifice or the omission of acts which are not intrinsically bad. *In re Stolen* (1927), 193 Wis. 602, 214 N. W. 379. "The profession of the law, in its nature the noblest and most beneficial to mankind, is in its abuse and abasement the most sordid and pernicious." Lord Bolingbroke, as quoted in *The People v. Salomon* (1900), 184 Ill. 490, 501, 56 N. E. 815.

Many lawyers in their practice have been confronted with the situation of drawing a will for a friend or a relative who wishes to make a bequest to him or to a member of his family. Perhaps sufficient consideration of the problem involved has not been given by lawyers or by the bar. The recurrence of the problem in the practice does not dull its serious dangers. The conflict of interests, the incompetency of an attorney-beneficiary to testify because of a transaction with the deceased (sec. 325.16, Stats.), the possible jeopardy of the will if its admission to probate is contested, the possible harm done to other beneficiaries, and the undermining of the public trust and confidence in the integrity of the legal profession, are only some of the dangers which a lawyer must consider.

The Canons of Professional Ethics, which may be considered as broad but not all-inclusive standards, do not expressly mention the drafting of wills. Canon 6 makes it

unprofessional conduct "to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts." [1] Canon 11 requires, "The lawyer should refrain from any action whereby for his personal benefit or gain he abuses or takes advantage of the confidence reposed in him by his client." [2] What little authority there is on the subject seems to be in conflict. One interpretation of the Canons goes no further than to state "the lawyer should consider having the testator submit the will [in which the attorney is the beneficiary] to another lawyer prior to its execution." [3] Orkin apparently does not consider an attorney is under any duty to see that his client has independent advice although it may be expedient to take such precaution. [4] Drinker, [5] a well-known authority, views the propriety of a lawyer's inserting in a will a legacy to himself as depending upon surrounding circumstances. He suggests, on page 94 of his book, if the circumstances "are such that the lawyer might reasonably be accused of using undue influence, he will be wise to have the provision inserted in a codicil drawn by another lawyer." However, when "a testator is entirely competent and the relation has been a longstanding one, and where the suggestion originates with testator, there is no necessity of having another lawyer in the case of a reasonable legacy."

We cannot approve these views in their totality as they do not sufficiently consider the effects such beneficiary's participation in the making of the will has in light of conflict of interests, the incompetency of the attorney-beneficiary to

[1] Drinker, Legal Ethics, p. 311.

[2] Drinker, Legal Ethics, p. 312.

[3] Decision #266, Opinions of Committee on Professional Ethics and Grievances, American Bar Association, p. 641; also found in Drinker, Legal Ethics, p. 297.

[4] Mark M. Orkin, Legal Ethics (1957), p. 104.

[5] Henry S. Drinker, author of Legal Ethics, was for many years the chairman of the Committee on Professional Ethics and Grievances of the American Bar Association.

testify, or the effect on the integrity of the bar in the eyes of the public. Somewhat opposed to these authorities is the view that where a testator wishes to make his attorney or a member of his immediate family a beneficiary under the will, ordinary prudence requires that such a will be drawn by some other lawyer of the testator's own choosing so that any suspicion of undue influence is thereby avoided. *In re Davis* (1953), 14 N. J. 166, 101 Atl. (2d) 521; *In re Blake's Will* (1956), 21 N. J. 50, 120 Atl. (2d) 745; *Magee v. State Bar, supra*. In *Blake* it was stated such steps are in conformance with the spirit of Canons 6 and 7 of the Canons of Professional Ethics promulgated by the court.

In ancient times under Roman law a legacy to one who drew the will was invalid. Under our American law such a legacy is not treated with such hostility as to make it void, but the circumstances in many states give rise either to the existence of a presumption or an inference of undue influence.[6] In this state if one standing in a confidential or fiduciary relationship to the testator participates in the making of the will in which he becomes a substantial beneficiary an inference arises of undue influence. *Will of Faulks* (1945), 246 Wis. 319, 17 N. W. (2d) 423. This rule was pointed out as being applicable to the attorney-client relationship in the two concurring opinions in the *Estate of Barnes, supra*. The nature of the inference is such as to include the characteristics of a presumption so that if no evidence is introduced to the contrary a *prima facie* case is established but the inference continues in the face of some evidence which tends to rebut it. *Schlichting v. Schlichting* (1961), 15 Wis. (2d) 147, 112 N. W. (2d) 149.

An attorney's duty of fidelity to his client involves more than refraining from exercising undue influence. A client

---

[6] 3 Page, Wills (Bowe-Parker rev.), p. 619, sec. 29.95; Anno. Wills—Presumption of Undue Influence, 66 A. L. R. 228, and 154 A. L. R. 583.

has a right to full and disinterested advice. The "right to make a will is a sacred and a constitutional right and that right includes a right of equal dignity to have it carried out." *Will of Wright* (1961), 12 Wis. (2d) 375, 380, 107 N. W. (2d) 146. When Mr. Horan was drafting the wills for Barnes he failed to recognize the conflict of interests which existed between him as an attorney for his client and his position as a beneficiary of a substantial sum of money. It was his duty to fully advise his client that the will was vulnerable to attack because of the inference of undue influence which arose and his incapacity to give testimony to support it. Nor should he have placed himself in a position of drafting the will where his self-interest might have prevented his giving disinterested advice. Here, both the testator and counsel knew a will contest was threatened and no steps were taken by counsel to insure the will would stand up over objections. True, he advised his client the *in terrorem* clause was no protection but he endangered the will by creating the facts upon which the inference of undue influence would arise. He should have insisted that a disinterested attorney of the client's own choosing be engaged to draft the will if he wanted to become a beneficiary of such a substantial amount under the will, or at least he should have taken such action, with his client's consent and approval after being fully advised, as would make available the testimony he foreclosed himself from giving by becoming a beneficiary. True, having placed himself in a precarious and untenable position, he, by the stipulation which resulted in the fifth will being admitted to probate, avoided the choice between renouncing the legacy to qualify him to give testimony which would support the will for the benefit of the rest of the beneficiaries and of serving his own interest by taking a chance that the will would be sustained without his testimony. We cannot say the stipulation absolves Horan from

creating, in part, the situation which was resolved by the stipulation.

In including the bequest to himself in the will although it was at the testator's request, Horan imperiled not only his bequest but all bequests. This state does not yet recognize the rule of partial invalidity in undue-influence cases. The injustice of the rule of total invalidity where only a separable part of the will is affected by undue influence is apparent. Under the doctrine of partial invalidity, the valid portions of a will may stand and be admitted to probate although other parts are denied probate because obtained through undue influence unless the provisions of the will are so interdependent that the valid cannot be separated from the invalid without defeating the general intent of the testator. 57 Am. Jur., Wills, p. 266, sec. 366; 3 Page, Wills (Bowe-Parker rev.), p. 26, sec. 26.11; Anno. Wills—Undue Influence—Effect, 69 A. L. R. 1129. Whether the rule should be modified is not now before us. We must consider Horan's conduct in the light of the rule of total invalidity.

We do not mean to state that a lawyer may never draw a will for a personal friend or members of his family or close relatives in which he or a member of his family is a beneficiary. A lawyer may draft a will for his wife, his children, or his parents, or other close relatives, in which he is a beneficiary and stands in the relationship to the testator as one being the natural object of the testator's bounty. In such a case if the proposed legacy to himself or a member of his family is reasonable and natural under the circumstances or no more than would be received by law and no reasonable grounds in fact exist for the attorney to anticipate a contest or for the public to have reasonable cause to lose confidence in the integrity of the bar, such will may be drawn. The mere existence of a confidential relation between the testator and his lawyer who is a beneficiary under the will does not *per se* raise the inference of undue influence. *Will of Faulks,*

*supra.* However, if the attorney acted as draftsman of the will and there are any circumstances either because of preferential treatment in relationship to others or if the bequest is more than a token or modest bequest from a personal friend or the attorney suggested the bequest to himself or to a member of his family, or any other somewhat-persuasive circumstances, the inference arises and would reasonably lead the public to question the integrity of the lawyer. Ordinarily a lawyer should not draw a will under circumstances which give rise to the inference of undue influence. He should draw a will in these circumstances only after fully advising his client of the effect thereof and when he is justified in believing that there is or will be independent competent evidence which rebuts the inference. This may impose some hardship or inconvenience upon attorneys but personal sacrifices are inherent in the practice of law which an attorney agrees to assume when he takes his oath of office. The entrusted privilege to practice law carries correlative duties and responsibilities to the court, the client, fellow lawyers, and the public. In each case there is perhaps a question of assaying the circumstances and making the choice but the attorney chooses at his peril.

Because the law on this subject has not been clearly defined or well understood by the members of the legal profession and no undue influence is involved, we deem a reprimand and the payment of costs to be sufficient.

It is ordered and adjudged that, the defendant be and hereby is reprimanded for his conduct and that he pay the costs and expenses of these proceedings including the fees and disbursements of the attorney for the plaintiff.