## IN RE ESTATE OF GRACE V. PETERSON.
## CHESTER G. W. GUSTAFSON v. LUZELLA KILGORE.

168 N. W. (2d) 502.

May 29, 1969—No. 41373.

*Harry H. Peterson,* for appellant.
*Kain & Kressel* and *John T. Kain,* for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Rogosheske, JJ.

ROGOSHESKE, JUSTICE.

Appeal from a judgment affirming an order of the probate court of Hennepin County denying admission of a purported will of Grace V. Peterson, decedent, to probate.

The sole question presented for review is whether the evidence sustains the determination by the district court that a purported will of decedent, dated October 21, 1964, was procured by undue influence exerted upon the testatrix by appellant, the named executor and the attorney who drafted it and supervised its execution. We hold that it does.

In April 1961, decedent, Grace V. Peterson, a spinster then aged

74, asked Chester G. W. Gustafson, a Minneapolis attorney, to draw a will for her. Gustafson, who had probated her sister's estate, drew this first as well as six subsequent wills and a codicil free of charge because, as he testified, she had no money to pay for his services. The beneficiaries of this first will were various cousins and close friends. In this will, as well as in all subsequent wills except the last, decedent bequeathed to each beneficiary specifically described household goods, wearing apparel, or personal effects, and named Howard Rhedin, a cousin, as the residual beneficiary. On December 11, 1962, and on January 14, 1963, Gustafson drew new wills for decedent, each containing several changes in her bequests and in the beneficiaries. On May 19, 1964, Gustafson drew a fourth will for decedent. In this will, decedent for the first time included Gustafson's children, Chester G. W., Jr., then aged 20 or 21, and Jo H., then aged 18, as beneficiaries. She left each a diamond ring and also left a watch and a coffee table to Jo. Gustafson testified that the only contacts decedent ever had with his children were several chance encounters between 5 and 10 years before in the offices where she worked, when the children delivered some produce to one of decedent's employers. There is no claim that she ever saw the children after that time. They neither attended her funeral nor appeared or testified in probate or district court.

Subsequent to this fourth will, Gustafson drew two more wills and a codicil, each will increasing the specific bequests of household articles to his children. On October 21, 1964, he drew a seventh will in which decedent left all of her property, which at her death included a homestead valued at $10,000 (encumbered by a $1,000 mortgage) and personal property valued, as the court found, at $1,459, to the Gustafson children. This will was drawn and executed under Gustafson's supervision within a 1-hour period. It was witnessed by two attorneys from a nearby office. Despite the radical changes in the will, its contents were never discussed with the witnesses, and they did not read its dispositive provisions. Gustafson immediately took possession of the will. Except for the testimony of Gustafson, no evidence

was submitted that decedent knew she had named the Gustafson children as sole beneficiaries.

As the trial court found, during the last 5 years of her life decedent often visited Gustafson in his office, where he joshed, kidded, and flattered her. He sent her flowers, brought her vegetables, visited in her home but never entertained her in his, was given a key to her house, and arranged a $1,000 loan for her (secured by a mortgage on her home) from a trust of which he was the trustee. Gustafson had himself appointed decedent's guardian in November 1965 following her incapacitating stroke without consulting with the relatives who arranged for her hospitalization.

Grace V. Peterson died on February 1, 1966, without ever changing the will of October 21, 1964. Gustafson, who, as in prior wills, was named as executor, sought to have it admitted to probate. The probate court refused on the ground that the will was "executed by decedent as a result of undue influence exercised upon her by * * * Chester G. W. Gustafson." Gustafson, as proponent of the will, appealed this decision to the district court. After a trial de novo, the district court found that the will was procured as the result of Gustafson's "exercising undue influence over and upon Testatrix" and affirmed the order of the probate court. Gustafson appeals.

In cases such as this, the contestant has the burden of establishing by clear and convincing evidence that a will was procured by undue influence. In re Estate of Anthony, 265 Minn. 382, 121 N. W. (2d) 772. Appellant argues that the trial court erred in concluding that the contestant sustained that burden, essentially because of the absence of any direct evidence that Gustafson or his children in fact exerted undue influence. Our function on appeal is limited to determining whether the trial court's conclusions are manifestly and palpably contrary to the evidence viewed in the light most favorable to respondent. In re Estate of Anthony, *supra;* Borstad v. Ulstad, 232 Minn. 365, 45 N. W. (2d) 828.

Undue influence has been defined as influence—

"* * * such as to substitute the will of the person exercising it for that of the testator, thereby making the written result express the pur-

pose and intent of such person, not those of the testator. It must be equivalent to moral coercion or constraint overpowering the will of the testator. *It must operate at the very time the will is made* and dominate and control its making." In re Estate of Marsden, 217 Minn. 1, 9, 13 N. W. (2d) 765, 770.

By its very nature, undue influence can usually be shown only by circumstantial evidence. In re Estate of Anthony, *supra;* In re Estate of Marsden, *supra.* Among the factors which should be considered in determining whether the circumstantial evidence clearly and convincingly supports a finding of undue influence are whether the evidence shows (1) an opportunity to exercise undue influence; (2) a confidential relationship between the person making the will and the party allegedly exercising the undue influence; (3) active participation in the preparation of the will by the party alleged to have exercised it; (4) disinheritance of those whom the decedent would have been expected to remember in his will; (5) a singularity of the provisions of the will; and (6) the exercise of either influence or persuasion to induce decedent to make the will in question. In re Estate of Wilson, 223 Minn. 409, 27 N. W. (2d) 429.

The evidence clearly shows that each one of these factors was in some degree present in this case. Gustafson had the opportunity to exert undue influence; had developed a confidential relationship with decedent; and had himself controlled the drafting of each of the series of wills which progressively disinherited all of her relatives and friends, with whom she had maintained close relationships, until finally her entire estate was left to his children, whom she had met only briefly a few times at least 4 years before she executed her final will. While the presence of any one of these facts standing alone might not have been enough to establish undue influence, taken together they clearly permit an inference of undue influence, furnish adequate evidentiary support for the court's determination, and most certainly answer the argument that the evidence is conclusive against that determination.

Once undue influence, however exerted, is established, a proffered will may not be admitted to probate even though the named beneficiaries are innocent of any wrongdoing, for such an instrument cannot

thereafter be regarded as a free and voluntary declaration of the testator's intentions. See, Graham v. Burch, 44 Minn. 33, 46 N. W. 148.

In addition, we held in In re Estate of Keeley, 167 Minn. 120, 124, 208 N. W. 535, 537, that—

"* * * when a beneficiary of a substantial portion of the estate sustains a fiduciary or confidential relation with the testator and acts as the scriviner [sic] in drawing the will or controls its drafting, such facts alone will make a prima facie case and will sustain a finding of undue influence."

While it was the children of decedent's attorney who were the sole beneficiaries of the will rather than the attorney himself, under the circumstances of this case surely the same rule must apply.[1] Appellant could easily have avoided the effects of this rule by referring decedent to another attorney for a discussion of her wishes, independent advice, and preparation of her will. Such adherence to what we view as a proper standard of professional conduct would have provided disinterested testimony that decedent did in fact intend his children to inherit her estate and quite probably would have avoided placing the will in jeopardy.[2]

Since the findings and determination of undue influence by the trial court have ample evidentiary support, the judgment entered must be, and is, affirmed.

Affirmed.

---

[1] See, In re Estate of Perssion, 20 Wis. (2d) 537, 123 N. W. (2d) 465, 13 A. L. R. (3d) 373. For a discussion of the procedural effect of a showing that members of the immediate family of the attorney who drafted a will are beneficiaries under it, see Annotation, 13 A. L. R. (3d) 373, 381.

[2] Even in the absence of undue influence, the practice of an attorney's drafting a will in which he or members of his immediate family, who are not the natural objects of a testator's bounty, are named as beneficiaries raises serious problems of professional responsibility. State v. Collentine, 39 Wis. (2d) 325, 159 N. W. (2d) 50; State v. Horan, 21 Wis. (2d) 66, 123 N. W. (2d) 488, 98 A. L. R. (2d) 1227. See, also, A. B. A. Special Committee on Evaluation of Ethical Standards, Code of Professional Responsibility (preliminary draft), p. 61.