## In re Petition for DISCIPLINARY ACTION AGAINST Ralph W. OLSON.

### No. C0-84-251.

Supreme Court of Minnesota.

Dec. 7, 1984.

Michael J. Hoover, Director of Lawyers Professional Responsibility Janet Dolan, First Asst. Dir., St. Paul, for petitioner.

Ralph W. Olson, pro se.

PER CURIAM.

The Minnesota Lawyers Professional Responsibility Board petitioned this court for discipline of respondent for self-dealing and conversion of assets from his sister-in-law's estate, failure to account for those assets, failure to comply with orders of the St. Louis County Probate Court and failure to cooperate with the Board's investigation. After careful examination of the record, we conclude respondent should be disbarred.

The facts are undisputed.[1] On September 28, 1972, respondent drafted a will for his sister-in-law Mabel Charlotte Olson. In that will, respondent was named as executor, and he was also one of ten beneficiaries. On June 6, 1978, Ms. Olson signed a power of attorney prepared by respondent which permitted respondent to act on Ms. Olson's behalf. In July 1978, Ms. Olson suffered cardiac failure and became comatose. Claiming to act pursuant to the power of attorney, respondent filed a deed on July 26, 1978 transferring title to Ms. Olson's home into his own name. Thereafter, respondent sold Ms. Olson's personal property, transferred the title to her automobile into his name and collected funds from her accounts. On August 7, 1978, respondent drafted a trust agreement and signed the agreement for Ms. Olson pursuant to the power of attorney. The trust agreement

---

1. By order dated September 1, 1984, this court ordered that pursuant to Minn.R.Law.Prof Resp. 13(c) the allegations in the Board's petition for disciplinary action were deemed admitted due to respondent's failure to timely answer the petition.

distributed the residue of Ms. Olson's estate in equal shares between her sister and respondent. This distribution resulted in an increase in respondent's residuary share of Ms. Olson's estate from one-seventh under the original will to one-half under the trust agreement.

Ms. Olson died on August 22, 1978 without ever regaining consciousness. On September 10, 1978, respondent claimed ownership of all property pursuant to the trust agreement and power of attorney. He likewise asserted the 1972 will was revoked by the parole agreement embodied in the power of attorney in the trust agreement. On July 8, 1980, a hearing in the St. Louis County Probate Court was scheduled. Respondent failed to appear after being served with notice of the hearing. It appears that shortly after Ms. Olson's death he left the state of Minnesota. In its findings, the St. Louis County Probate Court declared the trust void and specifically found respondent exercised undue influence in obtaining the power of attorney from Ms. Olson. That court also ordered the cancellation of the owner's certificate of title reflecting the transfer of Ms. Olson's home from Ms. Olson to respondent and thereby included the homestead in the estate. The court likewise ordered respondent to make a detailed accounting of all property and funds received from Ms. Olson and ordered respondent to provide a written statement concerning the disposition of three diamond rings taken from Ms. Olson's safe deposit box. Respondent failed to account for any of the property, failed to return the certificate of title and failed to provide the written statement. As a result, in October 1980 the personal representative for the Mabel Olson Estate was forced to bring a declaratory judgment action in St. Louis County District Court to void the certificate of title to the Olson homestead.

■ It is clearly improper for an attorney at law to draft legal instruments which will benefit the attorney or his family. *Gustafson v. Kilgore*, 283 Minn. 446, 168 N.W.2d 502 (1969); *see also State v. Hor-*

*an*, 21 Wis.2d 66, 123 N.W.2d 488 (1963); *Committee on Professional Ethics v. Behnke*, 276 N.W.2d 838 (Iowa 1979). We have likewise held that an attorney's drafting of a will for his conservatee constituted unprofessional conduct. *In re Franke*, 345 N.W.2d 224, 227 (Minn.1984).

■ In this case, respondent has engaged in the most egregious conduct by drafting documents for his self-interest. He drafted those documents re-distributing his sister-in-law's property to himself at a time when she was in a coma and unable either to assist herself or to obtain assistance of others to see that her true wishes were carried out. The misconduct of an attorney-beneficiary who drafts a will or trust agreement for a competent client but fails to advise the client to get independent legal counsel pales in significance when compared to respondent's drafting of trust documents giving property to himself when the settlor was not even conscious or able to decide if she wanted the trust agreement, let alone being unable to seek independent counsel. To use one's professional knowledge and skill as a lawyer to drastically alter, and perhaps frustrate, the testamentary intent of a comatose relative to the personal advantage of the lawyer constitutes extreme and serious professional misconduct and abuse of professional responsibility. In and of itself, such conduct warrants disbarment. *In re Franke*, 345 N.W.2d 224 (Minn.1984).

■ But, in connection with the Mabel Olson matter, respondent's later conduct in self-dealing and conversion of her assets coupled with refusal to account for property of the estate is even more outrageous. Respondent, an officer of the court, completely and openly flouted the authority of that court. He not only failed to obey the court's orders, but refused to account to the personal representative for Ms. Olson's funds. While the exact value of such property and funds is not precisely ascertainable, it seems clear that by the very nature of the property itself, its value was extensive. Moreover, the probate court ordered respondent to execute a quit claim deed

transferring the title to Ms. Olson's house to Northern City National Bank of Duluth, the personal representative of the estate. Respondent likewise failed and refused to do so. The personal representative was compelled to commence a declaratory judgment action to determine ownership of the Olson home, all at expense to the Olson estate.

Not only did respondent convert the decedent's property, but thereafter he departed from the jurisdiction so the heirs and the probate court could not probate the Mabel Olson Estate. These actions, combined with respondent's failure to respond to the court's order and failure to account for Ms. Olson's property and funds resulted in property loss to her heirs, significant frustration, delay and legal expense to the heirs and undermined the authority of the probate court.[2] Such a cavalier attitude by an attorney and officer of the court clearly warrants the serious discipline of disbarment.

Finally, we note that respondent's abdication of his professional responsibility for the safekeeping of client's property is exhibited by his failure to maintain books and records sufficient to demonstrate the preservation and separation of clients' funds from his own funds from 1979 through 1983—even though during each of those years respondent falsely certified to this court that his books were in compliance with Minn.Code of Professional Responsibility. DR 9–104(A) (Supp.1983).

In sum, the range of respondent's misconduct, including breach of fiduciary trust, self-dealing, failure to account for client assets, failure to comply with probate court orders, and falsely certifying to this court that he maintained proper books of account, all resulting in substantial harm to the heirs of Mabel Olson and to the public at large, warrants the imposition

of the most severe discipline. Respondent must be, and hereby is, disbarred.

Disbarred.

---

**2.** In addition to the foregoing, respondent filed suit in United States District Court for the Southern District of California in July 1981, alleging conversion, breach of contract, conspiracy and negligence against numerous Minnesota defendants associated with the probate court action. Respondent's suit was dismissed with prejudice by the federal courts for improper venue. Nevertheless, it was clear that it caused the heirs of the Mabel Olson Estate considerable loss in order to contest that claim.