**In the Matter of Carol Anne POLEVOY, Attorney–Respondent.**

**No. 99SA71.**

Supreme Court of Colorado,
En Banc.

May 10, 1999.

Linda Donnelly, Attorney Regulation Counsel, Luain T. Hensel, Assistant Regulation Counsel, Denver, Colorado, Attorneys for Complainant.

Leonard M. Chesler, Denver, Colorado, Attorney for Attorney–Respondent.

PER CURIAM.

The respondent in this lawyer discipline case, Carol Anne Polevoy, was first licensed to practice law in this state in 1971. Following the filing of a formal complaint against her, Polevoy executed a stipulation, agreement, and conditional admission of misconduct, *see* C.R.C.P. 241.18, in which she agreed to a suspension of one year and one day in conjunction with certain conditions. An inquiry panel of the grievance committee approved the conditional admission and its recommendation of discipline. We accept the conditional admission and suspend Polevoy for a year and a day with conditions.

#### I. *The Conditional Admission*

Judith Storm worked at the Denver City Attorney's Office where she met Polevoy, who was an attorney there. Storm executed a will in 1979 (not drafted by Polevoy) that

provided for bequests to the Fund for Animals and to Polevoy, among others, with the Dumb Friends League as the residuary legatee. The bequest to Polevoy consisted of certain jewelry.

In September 1989, Storm, who was in her seventies, fell and broke her hip and was not expected to survive through the night. At that time, she had a dog and three cats as indoor pets, but no children, relatives, or heirs. The hospital advised Polevoy of the accident. On September 15, 1989, Polevoy drafted a new will for Storm that was executed that day. Two days later, Polevoy drew up another will and a power of attorney appointing Polevoy Storm's attorney-in-fact. Storm executed these documents on September 19. While Storm was in the hospital, Polevoy boarded Storm's pets at a veterinary clinic. None of Storm's friends or neighbors was willing to serve as her guardian, personal representative, or to take care of her pets.

On October 12, 1989, Storm executed yet another will prepared by Polevoy. This will bequeathed $500 each to four animal shelters and jewelry to Polevoy. Polevoy also became the residuary legatee, with directions "to care for any and all animals of which I may die possessed, giving due care that they shall live a long and happy life under her care and using so much of the residuary estate for their care and welfare as necessary." The will also stated, "I would hope that Carol Anne Polevoy, after settling all of the just debts of my estate, and after caring for my animals as herein provided, would donate, in my memory, the remainder of my residuary estate to an organization whose aim is to further the health and welfare of cats." Polevoy and another person who worked with Storm were designated personal co-representatives of Storm's estate.

Following her discharge from the hospital, Storm required placement in an assisted living setting. On November 1, 1989, the probate court granted Polevoy's request and appointed her Storm's temporary guardian. Her duties included selection of a temporary place for Storm to live; management of Storm's day-to-day affairs; management of

the pets; and monitoring of Storm's physical and medical needs.

On December 12, 1989, two months after Storm executed the will directing Polevoy to provide care of her pets for their natural lives, Polevoy instructed the vet clinic where the animals were being kept to either find them homes within a short period of time or euthanize them. The clinic found a home for the dog, but the three cats were euthanized on December 21. Polevoy did not inform Storm that her cats had been euthanized. According to Polevoy's proffered testimony, she was forced because of lack of funds to choose between keeping the cats alive and caring for Storm. Hence, she chose to euthanize the cats. In March 1990, pursuant to a specific power of attorney, Polevoy conveyed Storm's residence to a buyer, resulting in proceeds in the amount of $35,025.96. Storm died on April 7, 1990.

Polevoy filed an informal and unsupervised probate action in Denver Probate Court on June 1, 1990. On the same day, Polevoy's co-representative resigned, leaving Polevoy as the sole personal representative of the estate. Between September 14, 1989 and September 4, 1990, Polevoy billed the Storm estate $48,470.00 in fees and $999.78 in costs, for a total of $49,469.78. However, she paid herself $57,631.17, over $8,000 more than she billed. Although Polevoy claims to have contemporaneous billing records substantiating her claim for the additional $8,000, she has not been able to produce them.

The inventory that Polevoy filed in September 1990 indicated that the total net value of the estate was a negative $21,500, including encumbrances. The encumbrances were guardian and personal representative fees and costs in the amount of $21,000. Storage fees took up the remaining $500. Polevoy has been unable to locate billing records to substantiate her claimed $21,000 in guardian and personal representative fees and costs.

Polevoy was a specific and residuary legatee under the will that she prepared, as well as serving as the personal representative of the estate. Polevoy has admitted that her preparation of the will violated DR 5–103(A) [1]

1. Because the misconduct in this case occurred    before January 1, 1993, the effective date of the

(acquiring a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client) and DR 5–105(A) (accepting employment when the exercise of the lawyer's independent professional judgment on behalf of a client will be or is likely to be affected by that acceptance). By serving as Storm's lawyer, guardian, personal representative, and, at the same time, a beneficiary under Storm's will, Polevoy violated DR 5–101(A) (accepting employment if the exercise of the lawyer's professional judgment on behalf of the client will be or reasonably may be affected by the lawyer's own interests). In addition, Polevoy's record keeping was inadequate, in violation of DR 9–102(B)(3).

However, the complainant has stipulated that it cannot be proven by clear and convincing evidence that Polevoy's conduct also violated DR 1–102(A)(4) (engaging in conduct involving dishonesty); DR 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice); DR 2–106(A) (charging or collecting a clearly excessive fee); or DR 7–106(A) (disregarding a standing rule or ruling of a tribunal). These violations were charged in the amended complaint.

## II. *The Recommended Sanction*

The inquiry panel approved the conditional admission and its recommendation that Polevoy be suspended for a year and a day; that she be required to undergo an independent medical examination prior to reinstatement to determine her physical and mental fitness to practice law; that Polevoy not serve in any fiduciary capacity during her suspension and for three years after reinstatement without the direct supervision of an approved attorney; and that she be required to submit to standard lawyer monitoring conditions following reinstatement.

■ Preparation of a will in which the lawyer will be a beneficiary is conduct for which a lawyer will be disciplined. *See People v. Berge,* 620 P.2d 23, 27 (Colo.1980). The lawyer in *Berge* was suspended for ninety days. *See id.* at 29. Berge's client wanted Berge to prepare a new will in which

Berge was to be a beneficiary. *See id.* at 24. Berge declined to draw up the will himself, but he had another lawyer he shared office space with prepare the will, which was later executed by the client. *See id.* at 24–25. In the disciplinary proceeding, Berge had been charged with exerting undue influence on his client in connection with the preparation and execution of the will, but the court determined that that charge had not been established by clear and convincing evidence. *See id.* at 27. Nevertheless, Berge's participation in the preparation of the will in which he was a substantial beneficiary constituted disciplinable conduct. *See id.* In reaching this conclusion, we cited Ethical Consideration (EC) 5–5:

> If a client voluntarily offers to make a gift to his lawyer, the lawyer may accept the gift, but before doing so, he should urge that his client secure disinterested advice from an independent, competent person who is cognizant of all the circumstances. *Other than in exceptional circumstances, a lawyer should insist that an instrument in which his client desires to name him beneficially be prepared by another lawyer selected by the client.*

(Emphasis added.) Although it had not been adopted when Berge committed the misconduct, we held that EC 5–5 "simply makes explicit some long-accepted standards of legal ethics that are relevant here." *See Berge,* 620 P.2d at 27. There are multiple reasons for the general prohibition.

> The conflict of interests, the incompetency of an attorney-beneficiary to testify because of a transaction with the deceased, the possible jeopardy of the will if its admission to probate is contested, the possible harm done to other beneficiaries and the undermining of the public trust and confidence in the integrity of the legal profession, are only some of the dangers which a lawyer must consider.

*State v. Horan,* 21 Wis.2d 66, 123 N.W.2d 488, 490 (1963) (citation omitted); *see generally* R.E. Barber, Annotation, *Drawing Will or Deed Under Which He Figures as Grantee, Legatee, or Devisee as Grounds of Disci-*

Rules of Professional Conduct, the former Code of Professional Responsibility applies.

*plinary Action Against Attorney*, 98 A.L.R.2d 1234 (1964).

Current Rule of Professional Conduct 1.8(c) (which was not in effect at the time relevant to this case, *see supra* note 1) explicitly prohibits a lawyer from preparing a will in which the lawyer receives a substantial gift, except where the testator is a relative of the lawyer. *See* Colo. RPC 1.8(c).

■ The conflicts of interest in this case were obvious. As the residuary beneficiary and as the lawyer and guardian, who expected to get paid for her work, Polevoy's own financial interests were directly adverse to Storm's interests, including that of preserving the lives of her pets. The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards*) provides that, in the absence of aggravating or mitigating factors, "[s]uspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client." ABA *Standards* 4.32.

The complainant states that the following mitigating factors are present: there is no record that Polevoy has ever been disciplined before, *see id.* at 9.32(a); she has cooperated in these disciplinary proceedings, *see id.* at 9.32(e); there has been a delay in these proceedings, *see id.* at 9.32(i); and Polevoy has shown remorse for her misconduct, *see id.* at 9.32(*l* ).

However, aggravating circumstances include a pattern of misconduct, *see id.* at 9.22(c); the presence of multiple offenses, *see id.* at 9.22(d); the victim of the misconduct was vulnerable, *see id.* at 9.22(h); and Polevoy has substantial experience in the practice of law, *see id.* at 9.22(i). Of these factors, the extreme vulnerability of Polevoy's client is the most substantial.

Polevoy has consented to a suspension from the practice of law for a year and a day, which includes the automatic requirement that she undergo reinstatement proceedings to demonstrate by clear and convincing evidence her fitness to once again practice. We agree that this is an appropriate sanction in this case, in conjunction with certain additional conditions. According, we accept the conditional admission and its recommendations.

### III.

It is hereby ordered that Carol Anne Polevoy be suspended from the practice of law for one year and one day, effective thirty days after the release of this opinion. Prior to reinstatement, and as a condition thereof, Polevoy is ordered to submit to independent medical examinations by health care providers approved by the Office of Attorney Regulation Counsel to determine her mental and physical fitness to resume the practice of law. Polevoy shall not serve as a guardian, conservator, or trustee, or act as an attorney in any fiduciary capacity for three years after she is reinstated, without the direct supervision of another lawyer approved by the Office of Attorney Regulation Counsel. Polevoy is also ordered to submit to the standard practice and financial monitoring conditions attached to this opinion as an appendix. Finally, Polevoy is ordered to pay the costs of this proceeding in the amount of $518.64, within thirty days after the release of this opinion, to the Attorney Regulation Committee, 600 Seventeenth Street, Suite 200 South, Denver, Colorado 80202–5432.

### *STANDARD CONDITIONS MONITORING OF PRACTICE BY ANOTHER ATTORNEY*

An attorney approved by the Office of Regulation Counsel shall review Respondent's legal files and method of handling Respondent's case load for a period of one year following Respondent's admission to the practice of law. The review procedure shall be as follows:

A.  Respondent shall demonstrate the existence of a workable reminder, or "tickler" system, and proof of a dual calendar system, or comparable case monitoring system, in Respondent's office to the Regulation Counsel within 90 days of any order of reinstatement and shall, by the reports of the monitoring attorney, demonstrate that both the reminder system and the dual calendar system, or comparable case-

monitoring system, is in existence and operating effectively.

B. A case-load-review meeting shall take place between the monitoring attorney and the Respondent on this schedule:

(1) First six months: meeting once per month;

(2) Second six months: meeting every other month;

(3) Second year: meeting quarterly.

C. At each meeting the following will take place:

(1) The Respondent will prepare a list of current, active files, which files will be reviewed by the monitoring attorney, together with the Respondent. The monitoring attorney will take steps to verify that the list is complete.

(2) The monitoring attorney will make, and the Respondent will write down, specific suggestions necessary to assure that the case load is being properly and professionally handled and that the Respondent is progressing in a satisfactory manner following Respondent's reinstatement.

(3) The monitoring attorney and the Respondent will review the list of suggestions from the previous meeting to be sure that all suggestions for improvement have been implemented and that the Respondent has complied with them.

(4) The monitoring attorney shall have access to and monitor, to the extent he deems necessary, all financial accounts of the Respondent, including personal accounts, in order to assure that no commingling of funds occurs.

D. Within ten days following each meeting, Respondent shall submit to the Office of Regulation Counsel a written report of the meeting, which report shall be signed by the monitoring attorney.

E. The monitoring attorney shall immediately disclose to the Office of Regulation Counsel, 600 17th Street, Suite 200–South, Denver, Colorado 80202, any matters which are uncorrected or which represent significant problems requiring corrective attention. Copies of such correspondence shall be sent to the Respondent.

### STANDARD CONDITIONS—FINANCIAL MONITORING

1. Respondent will maintain the following minimum records as to all bank accounts instituted or utilized by Respondent in any fashion whatsoever in the practice of law:

A. A separate bank account or accounts and, if utilized, a separate savings and loan association account or accounts, located in Colorado, in the name of the attorney or law firm and clearly labeled and designated as "trust account."

B. Original or duplicate deposit slips and, in the case of currency or coin, an additional cash receipts book, clearly identifying:

(1) The date and source of all trust funds received;

(2) The client or matter for which the funds were received.

C. Original cancelled checks, all of which must be numbered consecutively.

D. Other documentary support for all disbursements and transfers from the trust account.

E. A separate cash receipts and disbursements journal, including columns for receipts, disbursements, transfers, and the account balance, and containing at least:

(1) The identification of the client or matter for which the funds were received, disbursed, or transferred;

(2) The date on which all trust funds were received, disbursed, or transferred;

(3) The check number for all disbursements;

(4) The reason for which all trust funds were received, disbursed, or transferred.

F. A separate file or ledger with an individual card or page for each client or matter showing all individual receipts,

disbursements, or transfers and any unexpended balance and containing:

(1) The identification of the client or the matter for which trust funds were received, disbursed, or transferred;

(2) The date on which all trust funds were received, disbursed, or transferred;

(3) The check number for all disbursements;

(4) The reason for which all trust funds were received, disbursed, or transferred.

G. All bank or savings and loan association statements for all trust accounts.

2. Respondent will perform the following trust-accounting procedures:

A. The attorney shall cause to be made monthly:

(1) Reconciliation of all trust bank or savings and loan association accounts, disclosing the balance per bank, deposits in transit, outstanding checks identified by date and check number, and other items necessary to reconcile the balance per bank with the balance per the checkbook and the case receipts and disbursements journal;

(2) A comparison between the total of the reconciled balances of all trust accounts and the total of the trust ledger cards or pages, together with specific descriptions of any differences between the two totals and reasons therefor.

B. At least annually, a detailed listing identifying the balance of the unexpended trust money held for each client or matter.

C. The above reconciliations, comparisons, and listing shall be retained for at least six years.

3. Respondent shall direct any bank or savings and loan association where Respondent is a signatory on any bank account utilized in the practice of law to notify the Office of Regulation Counsel, 600 17th Street, Suite 200–South, Denver, Colorado 80202, in the event any law firm or trust account check is returned due to insufficient funds or uncollected funds, absent bank error. Further, if any such check is returned, Respondent shall, likewise, notify the Office of Regulation Counsel.

4. Respondent shall file a written report with the Office of Regulation Counsel each year for a period of five years beginning one year from the date of the reinstatement order regarding the satisfactory maintenance of the financial aspect of Respondent's law practice and demonstrating Respondent's compliance with the conditions set forth above. The said report shall contain the certificate of a certified public accountant verifying that the procedures set forth above were followed and that an audit demonstrated no irregularities in the handling of the trust accounts. Said audit and report shall be conducted and complied with at Respondent's sole expense.

5. Respondent shall obtain malpractice insurance coverage of no less than $100,000.00 for each claim and, within thirty days of the order of reinstatement, shall deliver to the Office of Regulation Counsel documentary proof of the existence of such coverage; further, the annual written report filed with the Office of Regulation Counsel referred to herein above shall specifically include documentary proof of the continued existence of malpractice insurance coverage during the entire period of monitoring by the Regulation Counsel described herein.

6. Respondent shall specifically maintain separate accounts for any funds coming into Respondent's possession as a real estate broker and shall not utilize Respondent's law firm business account nor trust accounts for any broker functions whatsoever.