In re William B. DEVANEY, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals.

No. 04–BG–918.

District of Columbia Court of Appeals.

Submitted Feb. 28, 2005.

Decided March 3, 2005.

---

Before SCHWELB and RUIZ, Associate Judges, and KERN, Senior Judge.

PER CURIAM:

The District of Columbia Court of Appeals Board on Professional Responsibility ("Board") recommends that this court find that respondent, William B. Devaney, a member of the Bar of this court, be disbarred upon the ground that he violated Rules 1.1(a), 1.8(b), and 5.5(a) of the Rules of Professional Conduct.[1] Neither respondent Devaney nor the District of Columbia Bar Counsel challenges this recommendation.

The largely uncontested evidence presented to and accepted by the Hearing Committee and then the Board shows that in 1993, Mrs. Florence Welch executed a will drafted for her by Dale Roberts, Esquire, a Virginia attorney. Under its terms, Mrs. Welch's residence in Arlington, Virginia,[2] was to be sold and the proceeds distributed to the Shriner's Hospital for Crippled Children and the Salvation Army. The residue of Mrs. Welch's estate, including a trust with assets in excess of $1 million, was left to a non-profit District of Columbia Corporation conducting research on Alzheimer's disease ("Alzheimer Foundation"). The will also designated Respondent Devaney as the executor of her estate and left $10,000 and certain items of personal property to his wife, Norma Devaney.

Mrs. Welch was born in 1896 and was thus almost 97 years old when Mr. Roberts drafted her will in 1993. He had no concerns about Mrs. Welch's mental capabilities, however, including her ability to make informed and reasoned decisions about the disposition of her estate, because of several meetings and discussions he had with her in the course of preparing her will. In April 1994, Mrs. Welch fell and broke her hip. She was hospitalized and then transferred to a nursing facility where, by all accounts, she was very depressed and on medication. It was during this time that Mrs. Welch spoke with respondent Devaney about her will. The two were not related to each other, but they were neigh-

---

1. Rule 1.1(a) provides that an attorney must provide competent representation; Rule 1.8(b) prohibits an attorney from preparing a testamentary instrument which conveys property to himself or his immediate family; and, Rule 5.5(a) says that an attorney may not engage in the practice of law in a jurisdiction where he is not licensed. All members of the Board agree that respondent should be disbarred, but three members decline to find that Respondent violated Rule 1.1(a).

2. The home was valued at approximately $340,000 at the time of her death on September 13, 2001, at 104 years of age.

bors and had been friends for many years. Mrs. Welch had consistently sought the advice of attorneys for estate planning purposes and she knew that respondent Devaney was an attorney. Because of this and because she trusted him as a friend and neighbor, she sought him out for the specific purpose of discussing her will.

Respondent Devaney, who has never been licensed to practice law in Virginia, admits that he advised her on the tax consequences of non-charitable bequests, questioned her expressed intent to make certain changes to her will, and recommended his sons as alternate beneficiaries.[3] He also admits that in May 1994 he drafted a codicil to Mrs. Welch's will which increased the cash bequest to his wife from $10,000 to $30,000, and named her as the alternate executor in place of Mr. Roberts, the attorney who had drafted her will. He also drafted a power of attorney naming himself as Mrs. Welch's attorney-in-fact to transact all of her business and manage all of her property and affairs. Mrs. Devaney was named as the successor attorney-in-fact.

After Mrs. Welch was discharged from the hospital she needed 24–hour care. Mrs. Devaney made the necessary arrangements and in 1996 she hired Joan Gilbreath, a certified nursing assistant with experience in geriatric care, to render care to Mrs. Welch. Ms. Gilbreath testified that she immediately concluded that Mrs. Welch's mental capacity was impaired. Both Ms. Gilbreath and Mrs. Devaney testified that by September 1997, Mrs. Welch had become unable to manage her own finances and so Mrs. Devaney took over the management of Mrs. Welch's finances. Shortly thereafter, in February 1998, respondent Devaney drafted a second codicil to the will which removed the

trust assets from the residue of Mrs. Welch's estate and left them to his sons. This second codicil also gave Mrs. Devaney additional items of personal property. No one was present at the execution of the second codicil, which took place in the kitchen of the Devaney's home, except the Devaneys and Mrs. Welch.

Ms. Gilbreath began to suspect that the Devaneys were manipulating Mrs. Welch because of conversations she had overheard and because Mrs. Welch informed her, under what appeared to be some duress by Mrs. Devaney, that she was leaving everything to the Devaneys. In June 2000, respondent Devaney drafted a third codicil to the will which revoked the specific bequests to Shriner's Hospital and the Salvation Army as well as the clause leaving the residue of Mrs. Welch's estate to the Alzheimer Foundation. He prepared a new residuary clause specifically to include Mrs. Welch's residence and also designated Mrs. Devaney as the residuary beneficiary, with respondent Devaney and their sons as alternate beneficiaries. In sum, the three codicils respondent Devaney drafted removed substantial bequests to three charities and redirected them to members of his family.

After the third codicil was executed, Ms. Gilbreath expressed her concerns about these developments to another friend of Mrs. Welch. That friend discussed the matter with Mrs. Welch who agreed to contact Mr. Roberts. She did so and he visited her at home on August 14, 2000, approximately two months after she had executed the third codicil drafted by respondent Devaney. Mr. Roberts noted a marked decline in her mental capabilities and testified later that at that time she lacked testamentary capacity. Among

**3.** Mrs. Welch knew Respondent Devaney's two sons as children, but she had had no relationship with either of them after they left Virginia in 1975 and 1980, respectively.

other things, she stated to him that she had made *no* changes to her 1993 Will and did *not* recall executing any codicils.

The Adult Protective Services Program for Arlington County was also notified of the situation and in February 2001, a social worker visited Mrs. Welch. The Program subsequently initiated protective proceedings in the Circuit Court of Arlington County. That court eventually adjudicated Mrs. Welch incompetent and appointed both a guardian for her person and a conservator to manage her property. It also revoked all previously issued powers of attorney. Mrs. Welch passed away shortly thereafter. The guardian appointed by the court submitted her will and the codicils for probate, but the codicils were challenged by a number of the beneficiaries on the grounds that Mrs. Welch lacked sufficient mental or testamentary capacity to understand them and because they were the product of undue influence and an abuse of the confidential relationship between Mrs. Welch and respondent Devaney. That matter was settled in May 2002.[4]

In the meantime, the social worker's report was sent to the Virginia Bar Association which referred the matter to Bar Counsel. On August 1, 2002, Bar Counsel filed a Specification of Charges with the Board and a petition instituting formal disciplinary proceedings. Bar Counsel alleged that by preparing the three codicils, respondent Devaney had violated Rules 1.1(a), 1.8(b), and 5.5(a) of the Rules of Professional Conduct. Respondent Deva-ney answered the Specification in detail and challenged the allegations by asserting that he was only carrying out the wishes of a friend and was not practicing law.

Hearing Committee Number Seven heard the matter on September 20 and October 24, 2002, and after post-hearing briefs were filed and considered, the Committee issued a report finding that respondent Devaney had violated the three rules. It recommended that he be disbarred. Bar Counsel took no exception to the report, but Respondent Devaney did. He conceded that he had violated Rule 1.8(b), but argued that he should not be disbarred because he was unaware of the Rule and had not intended to violate it. Briefs were filed and the Board heard oral argument. On July 30, 2004, the Board issued a Report and Recommendation accepting the Hearing Committee's report and recommending disbarment. As noted above, Bar Counsel informs us that she takes no exception to the Board's Report and Recommendation and respondent Devaney has not filed an opposition.

The Board's recommendation of a proposed sanction comes to us with a heavy presumption in its favor;[5] it will be adopted "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted."[6] This presumption becomes even stronger and our review more deferential when, as here, no exceptions have been filed.[7] The Board notes there is only one reported decision of an original case involving a violation of Rule 1.8(b),

---

4. Under the terms of the settlement, Mrs. Welch's property will be distributed as provided by her 1993 will, except that respondent's wife will receive $ 49,000, and a doll, and respondent's sons will receive $100,000 each. Respondent has also agreed to renounce his appointment as the executor of Mrs. Welch's estate.

5. *In re Slattery,* 767 A.2d 203, 214 (D.C.2001) (citing *In re Goffe,* 641 A.2d 458, 463 (D.C. 1994)).

6. D.C. Bar R. XI, § 9(g)(1).

7. D.C. Bar R. XI, § 9(g)(2); *In re Viehe,* 762 A.2d 542, 543 (D.C.2000).

the most serious of respondent Devaney's violations, in this jurisdiction.[8] The Board, therefore, looked to other jurisdictions that have addressed a violation of a rule similar to Rule 1.8(b), as well as to cases in this jurisdiction involving comparably serious misconduct.[9] We are satisfied with the recommended sanction of disbarment upon the particular circumstances here. Obviously, the facts involved in any such alleged violation will necessarily be unique and must be considered on a case by case basis. In this case, however, the evidence supports the conclusion that respondent violated Rule 1.8(b). Since we are persuaded upon the facts established in this case that respondent Devaney should be disbarred for violation of Rule 1.8(b), we need not consider whether disbarment is also appropriate for respondent's violations of Rules 1.1(a) and 5.5(a).

■■■■ Respondent did not file any exceptions to the Board's Report. However, he did present to the Hearing Committee

and the Board contentions which we deem to be without merit. Thus, (1) a written retainer agreement is not necessary to establish an attorney-client relationship;[10] (2) an attorney is presumed to know the ethical rules governing his behavior, and ignorance neither excuses nor mitigates a violation;[11] (3) drafting a testamentary document, including codicils to a will, is the practice of law; and (4) "[t]here is nothing clearer to the public ... than stealing a client's money and nothing worse."[12]

Accordingly, it is ORDERED that William B. Devaney is disbarred from the practice of law in the District of Columbia, and his name shall be stricken from the roll of attorneys authorized to practice before this court.

*So ordered.*

8. We note that in that decision, *In re Berryman*, 764 A.2d 760 (D.C.2000), there was no evidence of coercion.

9. *See, e.g., In re Miller*, 149 Wash.2d 262, 66 P.3d 1069 (2003) (en banc) (attorney disbarred after drafting two wills and a codicil, for an elderly woman, each of which gave him a large portion of her estate); *In re Crary*, 638 N.W.2d 23 (N.D.2002) (attorney, who drafted his elderly friend's will, was disbarred for devising a substantial amount of his friend's money to his own wife); *In re Slattery, supra* note 5 (attorney disbarred for misusing funds under his control); *In re Viehe, supra* note 7 (attorney disbarred for deliberately taking client funds); *In re Pierson*, 690 A.2d 941 (D.C.1997) (attorney disbarred for using client escrow account to pay her general business expenses); *In re Gil*, 656 A.2d 303 (D.C.1995) (attorney disbarred for committing larceny or the equivalent thereof); *In re Hammell*, 190 Wis.2d 635, 527 N.W.2d 690 (1995) (attorney's license revoked because he amended client's trust instrument in order to give himself a substantial bequest, convinced his client to loan him money which he then false-

ly documented, and he had his client sign checks payable to him and members of his family); *In re Vitko*, 519 N.W.2d 206 (Minn. 1994) (en banc) (attorney disbarred for drafting wills, a trust and amendments thereto, including an amendment which made the trust an irrevocable trust, all of which gave him sole discretion to distribute client's estate); *In re Olson*, 358 N.W.2d 662 (Minn. 1984) (attorney disbarred for using power of attorney to draft documents leaving his comatose sister-in-law's entire estate to himself); *Comm. on Prof'l Ethics & Conduct v. Randall*, 285 N.W.2d 161 (Iowa 1979) (attorney disbarred on two grounds including making himself sole beneficiary of client's will).

10. *In re Ryan*, 670 A.2d 375, 380–81 (D.C. 1996) (citation omitted).

11. *In re Harrison*, 461 A.2d 1034, 1036 n. 3 (D.C.1983).

12. *In re Addams*, 579 A.2d 190, 194 (D.C. 1990) (en banc) (quoting *In re Wendell R. Wilson*, 81 N.J. 451, 409 A.2d 1153, 1155 (1979)).